IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| CANADA GOOSE INC., a Canadian Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )  CA. NO. ) |
| REGISTRANT OF CANADIAN GOOSE.COM, | ) ) ) |
| and | ) ) |
| JOHN DOES (1-10), | ) ) |
| Defendants. | ) ) |

**COMPLAINT**

Plaintiff, Canada Goose Inc. ("Canada Goose"), for its Complaint against the defendant, Registrant of CanadianGoose.com ("Registrant"), alleges as follows:

**NATURE OF THIS ACTION**

1. Canada Goose is a premiere manufacturer of luxury outerwear apparel and has registered several federal trademarks for CANADA GOOSE® (and variations thereof). Founded 60 years ago, Canada Goose designs and manufactures apparel that is uniquely suited for cold climates. Its top quality products, including its unique and highly visible name and logo, have been featured in several feature films and worn by a diverse range of people worldwide, including researchers in the Artic, celebrities, and professional athletes. Canada Goose advertises and sells its products on CanadaGoose.com. Registrant traffics in the domain name CanadianGoose.com ("Infringing Domain Name") and intentionally confused and mislead consumers searching for Canada Goose's genuine products. Registrant has no legitimate business

purpose in using the confusingly similar name "Canadian Goose;" rather, Registrant purchased the Infringing Domain Name with the sole purpose of exploiting the goodwill that Canada Goose created in the CANADA GOOSE® brand. When approached anonymously about selling the Infringing Domain Name, Registrant, assuming that the offer was being made on behalf of Canada Goose, advised that it was seeking more than $100,000 for the domain name. This ransom amount is, alone, evidence of Registrant's bad faith. Based on Registrant's unlawful use and exploitation of Canada Goose's federally-registered trademarks, Canada Goose seeks a preliminary and permanent injunction, compensatory damages, and attorneys' fees and costs.

## THE PARTIES

2. Plaintiff Canada Goose is a Canadian Corporation with its principal place of business at 250 Bowie Avenue, Toronto, Canada M6E4Y2.

3. Defendant Registrant is a business or individual whose actual name is currently unconfirmed and whose true address is currently unknown. Upon information and belief, Registrant is the registrant, creator, and operator of the website associated with the domain name CanadianGoose.com, and who, at all relevant times herein, has been engaged in the use of Canada Goose's trademarks in this judicial district and throughout the United States.

4. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 through 10, are unknown to Canada Goose, which sues said defendants by such fictitious names (the "Doe Defendants"). If necessary, Canada Goose will seek leave of Court to amend this Complaint to state their true names and capacities when they have been ascertained. Canada Goose is informed and believes and on that basis alleges that the DOE Defendants are liable to Canada Goose as a result of their participation in all or some of the acts set forth herein.

## JURISDICTION AND VENUE

5. This is an action for trademark infringement and unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq*.; for violations of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); and for trademark infringement and unfair competition under the laws of the Commonwealth of Virginia.

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338; 15 U.S.C. § 1114; 15 U.S.C. § 1125(a) and (d); and 15 U.S.C. §§ 1116 and 1121. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Canada Goose's claims for trademark infringement and unfair competition under the laws of the Commonwealth of Virginia.

7. This Court has **in rem** jurisdiction over Registrant pursuant to 15 U.S.C. §1125(d)(2)(A)(ii)(II) and 15 U.S.C. §1125(d)(2)(A)(ii)(I) because Canada Goose cannot obtain **in personam** jurisdiction over the Registrant. **In rem** jurisdiction is also appropriate due the fact that despite Canada Goose's due diligence, Canada Goose was unable to locate a person who would have been a defendant in a civil action under 15 U.S.C. §1125(d)(1) and has sent notice to Registrant pursuant to 15 U.S.C. §1125(d)(2)(A)(ii)(II)(aa). Canada Goose will promptly publish notice of the action after filing, as the court may direct, pursuant to 15 U.S.C. §1125(d)(2)(A)(ii)(II)(bb). **In rem** jurisdiction is proper in this district pursuant to 15 U.S.C. §1125(d)(2)(C)(i) because the domain name registry for the Infringing Domain Name - VeriSign, Inc. ("VeriSign") - is located in this judicial district. Documents establishing control and authority regarding the disposition of the registration of the Infringing Domain Name shall be deposited with the Court.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) and 15 U.S.C. §§1125(d)(2)(A) and (C) because VeriSign, the registry operator for all .com domain names, like Registrant's infringing domain name, conducts business in this district and has its World Wide Headquarters in this district at 12061 Bluemont Way, Reston, Virginia 20190.

## FACTUAL BACKGROUND

### CANADA GOOSE® Brand and Intellectual Property

9. Canada Goose is one of the world's leading providers of luxury outerwear apparel under the trademark and trade name CANADA GOOSE®, which it displays prominently on all of its products ("Canada Goose Products").

10. The origins of the Canada Goose Products date back to 1957, when Sam Tick founded Metro Sportswear Ltd. in Toronto, which specialized in woolen vests, raincoats, and snowmobile suits.

11. In the 1970's, David Reiss, Sam Tick's son-in-law, joined the company and launched a new era for Metro Sportswear with the invention of a volume-based down filling machine. Mr. Reiss also established the label Snow Goose, which later became Canada Goose.

12. Inspired by one of the coldest places on earth, the Expedition Parka was developed in the 1980's to meet the unique needs of scientists at Antarctica's McMurdo Station. It became standard issue and gained the nickname "Big Red." In 1982, Laurie Skreslet made history as the first Canadian to summit Mt. Everest, wearing a custom parka designed and manufactured by Metro Sportswear.

13. In 1997, Dani Reiss, son of David Reiss and grandson of Sam Tick, joined Canada Goose, and in 2001 became president and CEO of Canada Goose.

14. Since 2001, Canada Goose has enjoyed tremendous growth and increased notoriety. For instance, in 2004, Canada Goose jackets appeared prominently in the films *The*

*Day After Tomorrow* and *National Treasure*. In 2007, celebrating the company's 50th Anniversary, Canada Goose published the first Goose People book – highlighting 50 people from around the globe who embody the company's values and lifestyle and inspire others through epic adventures. In 2011, Canada Goose, after acquiring a new manufacturing facility to meet increased product demand, launched innovative lighter-weight products suitable for diverse climates and high-intensity activities, including the HyBridge® Lite jacket, which won the "Best Backcountry Jacket" in the prestigious Gear of the Year awards from *Outside Magazine*.

15. In 2015, in line with its longstanding relationship with the film industry, Canada Goose collaborated with an Oscar-winning director and produced *Out There*, a short film that captures the extraordinary true stories of Goose People over the past six decades.

16. In 2016, Canada Goose opened its first two flagship stores, located in Toronto and New York City. The stores weave together Canada Goose's Arctic heritage with modern innovation and offer customers the widest selection of product, from the broadest range of colors and styles from one-of-a-kind exclusives. Canada Goose also sells its products from other high-end brick and mortar stores in the United States, such as Neiman Marcus, Bergdorf Goodman, Saks Fifth Avenue, Bloomingdales, and Nordstrom.

17. Since at least as early as 1999, Canada Goose has also been promoting and later selling its products through its website CanadaGoose.com ("Canada Goose Website"). The Canada Goose Website enjoys approximately 2.4 million unique visitors, constituting 3.7 million sessions, each month. A significant amount of Canada Goose's sales of Canada Goose Products are made on the Canada Goose Website. In addition to the Canada Goose Website, Canada Goose also owns nearly 200 other the domain names that incorporate the CANADA GOOSE trademark, including canadagoose.org, canadagoose.ca, canadagoose.eu, and canadagoose.cn.

Canada Goose also promotes its products through social media, including its Facebook page, which has nearly 300,000 "likes," and Instagram, where it enjoys 218,000 followers.

18. In addition to creating and managing a highly successive business, Canada Goose has also been involved in a number of charitable organizations and outdoor ventures that provide commitment to Arctic stewardship and the environment. For instance, in 2007, Canada Goose joined forces with Polar Bears International ("PBI") and launched the PBI Collection. Funds from every sale go to PBI to support the conservation of polar bear habitats. In 2009, two Canada Goose Resource Centres were established in the Canadian Arctic. The Centres provide free fabrics, buttons, zippers and other materials for Inuit sewers who hand-make jackets and clothing for their families and community.

19. Canada Goose is the owner of a well-established family of famous trademarks, including the following, for which it has federal trademark registrations or applications with the U.S. Patent and Trademark office:

| Registration/ Application Number | Trademark | Goods and Services |
|---|---|---|
| Registration No. 4455111 | CANADA GOOSE | Class 25, outerwear, namely, coats, parkas, jackets, vests, pullovers, shirts, headwear, scarves, gloves and mittens, substantially made of goose down, where applicable |
| Registration No. 3254771 | CANADA GOOSE ARCTIC PROGRAM (with circular logo depicting CANADA GOOSE ARCTIC PROGRAM around a map design) | Class 25, clothing, namely parkas, coats, jackets, pullovers, vests, sweaters, shirts, anoraks, and headwear, substantially made of goose down, where applicable |

| Registration/ Application Number | Trademark | Goods and Services |
|---|---|---|
| Application No. 87062211 | CANADA GOOSE | Class 35, retail store services featuring outerwear, clothing, apparel, footwear, headwear; online retail store services featuring outerwear, clothing, apparel, footwear, headwear |
| Application No. 87062201 | CANADA GOOSE ARCTIC PROGRAM | Class 35, retail store services featuring outerwear, clothing, apparel, footwear, headwear; online retail store services featuring outerwear, clothing, apparel, footwear, headwear |
| Registration No. 3983188 | CANADA GOOSE | Class 25, outerwear, namely, coats, jackets, parkas, pull-overs, substantially made of goose down, where applicable |
| Registration No. 3979986 | CANADA GOOSE ADVENTURE TOURS | Class 39, travel and tour services, namely, arranging and coordinating travel arrangements for individuals and groups, arranging travel tours, organization of excursions, tours and travel; arranging and operating adventure activity tours and excursions |

20. The above U.S. registrations for the CANADA GOOSE Trademarks are valid, subsisting, in full force and effect, and Registration No. 3254771 is incontestable pursuant to 15 U.S.C. § 1065.

21. Canada Goose also owns common law rights in the above marks, which, together with Canada Goose's registered trademarks, are collectively the "Canada Goose Trademarks."

22. Canada Goose prominently displays the Canada Goose Trademarks in its advertising and promotional materials. Canada Goose has spent substantial amounts in advertising and promoting the Canada Goose Trademarks and Canada Goose Products. The continuous and broad use of the Canada Goose Trademarks in connection with Canada Goose Products has enabled Canada Goose to achieve widespread fame, and has made the Canada Goose Trademarks themselves famous and widely-recognized marks in the fashion industry.

23. Consumers, potential consumers, and other members of the public not only associate Canada Goose Products with exceptional materials, style and workmanship, but also recognize that Canada Goose Products originate exclusively with Canada Goose. Consequently, Canada Goose has acquired and enjoys an outstanding reputation and significant goodwill associated with the Canada Goose Trademarks on the Canada Goose Products.

24. Canada Goose aggressively protects and polices the valuable Canada Goose Trademarks and has campaigned globally against counterfeits for over a decade, making significant investments in the fight against counterfeit goods to educate and protect consumers. For instance, on the Canada Goose Website, consumers can enter the URL of any website they believe may be selling counterfeit merchandise to immediately verify whether or not it is an Authorized Retailer; every Canada Goose jacket and accessory includes a hologram in its seam as proof of authenticity; and Canada Goose continuously works with law enforcement agencies, border protection services and financial institutions around the world, and has hired third-party online brand protection agencies to stop the sales of counterfeit products online.

**Registrant's Wrongful Acts**

25. On May 29, 2002, at the precise moment in Canada Goose's history when it began to expand and aggressively promote its products and brand, upon information and belief, Registrant registered the Infringing Domain Name, CanadianGoose.com.

26. The registry operator for the Infringing Domain Name is VeriSign, Inc.

27. The Infringing Domain Name is registered through a privacy protect service, obscuring the true identity and location of the Registrant.

28. The similarity between the Infringing Domain Name and the Canada Goose Trademarks is obvious. Indeed, a Google search for "Canadian Goose" automatically suggests "Canada Goose, Apparel company," demonstrating the likelihood of confusion between "Canada" and "Canadian."

29. As of November 28, 2016, the website located at the Infringing Domain Name prominently displayed the following links, among others: "Canada Goose Jacket," "Canada Goose Parkas," "Canada Goose Online," "Canada Goose Down Jacket," and "Canadian Goose Down." Attached hereto as Exhibit A is a true and correct copy of screen captures as of November 28, 2016 of the website located at the Infringing Domain Name.

30. Registrant had and continues to have an intent to generate revenue for itself through use of the Canada Goose Trademarks by attracting traffic to its website and monetizing that traffic through click-through advertising and by offering the domain name for lease. As of November 28, 2016, clicking on the above links on the website located at the Infringing Domain Name (e.g., "Canada Goose Jacket" or "Canada Goose Parkas") would link a consumer to websites of Canada Goose's competitors, including The North Face, Eddie Bauer, L.L. Bean, and Columbia, as well as departments stores like Macy's. *See* Exhibit A. When a user clicked on

the links displayed on the website located at the Infringing Domain Name, Registrant received click-through fees from Canada Goose's competitors. Registrant was therefore profiting from intentionally misleading, confusing, and diverting consumers who were searching for Canada Goose's Products.

31.    Registrant further offered consumers the option to "lease" the Infringing Domain Name, further demonstrating its intent to profit from exploiting the Canada Goose Trademarks and the Infringing Domain Name. *See* Exhibit A.

32.    Registrant was not authorized by Canada Goose to take any of the actions set forth in the preceding paragraphs.

33.    Registrant took the above unlawful actions with the apparent intent of attracting Canada Goose's attention in order to procure from Canada Goose an unreasonably high dollar amount for the Infringing Domain Name.

34.    Following its discovery of the Infringing Domain Name, Canada Goose made an anonymous offer to purchase the Infringing Domain Name through the broker used by the Registrant. An initial response was received that the Registrant would only entertain offers of $10,000 and higher. Canada Goose therefore made an offer of $10,000. In response to Canada Goose's $10,000 offer, Registrant's broker responded:

> The domain owner really wants offers of $100,000 USD or more. Canadagoose.com sells outfits starting at $800 USD ranging to really high end prices. If you are buying to protect your brand or to even sell clothing this domain would easily pay for itself.

35.    Rather than allowing Registrant to hold the Infringing Domain Name on ransom, Canada Goose decided to place Registrant on notice of its unlawful conduct. On December 12, 2016, counsel for Canada Goose sent a cease and desist letter to Registrant and its Privacy

Protect service, setting forth its ownership of the Canada Goose Trademarks and the Canada Goose Website, and also attaching the November 28, 2016 screenshots shown on Exhibit A.

36. Canada Goose did not receive any written response to its December 12, 2016 letter from either Registrant or its Privacy Protect service. Nor did the Privacy Protect service reveal Registrant's true identity. However, by December 19, 2016, Registrant had made changes to the website located at the Infringing Domain Name, removing references to Canada Goose. *See* Exhibit B. The new links on the website located at the Infringing Domain Name continue to link to retailers. Registrant also continues to offer consumers to "lease" the domain name. *See* Exhibit B.

37. On December 19, 2016, Canada Goose sent Registrant and its Privacy Protect service a second cease and desist letter, noting the intervening changes to the website located at the Infringing Domain Name and advising that Registrant continued to infringe Canada Goose's rights. Canada Goose did not receive any response to its December 19, 2016 letter.

## COUNT ONE:
## FEDERAL TRADEMARK INFRINGEMENT
**(15 U.S.C. § 1114)**

38. Canada Goose repeats and realleges the allegations contained in the foregoing paragraphs 1 through 37, as if fully set forth herein.

39. The Canada Goose Trademarks and the goodwill of the businesses associated with them in the United States are of great and incalculable value, are highly distinctive, and have become universally associated in the public mind with Canada Goose Products and related services of the highest quality and reputation finding their source from Canada Goose.

40. Without Canada Goose's authorization or consent, Registrant, through the website located at the Infringing Domain Name, used marks which are intentionally identical to the Canada Goose Trademarks to advertise, offer for sale and/or sell products in a manner that is

likely to cause confusion, mistake, and deception among the general purchasing public, all to the damage and detriment of Canada Goose's reputation, goodwill, and sales.

41. Canada Goose has no adequate remedy at law, and if Registrant's activities are not enjoined, Canada Goose will continue to suffer irreparable harm and injury to its goodwill and reputation.

42. Registrant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Canada Goose Trademarks to Canada Goose's great and irreparable injury.

43. Registrant is causing and will continue to cause substantial injury to the public and to Canada Goose, and Canada Goose is therefore entitled to injunctive relief and to recover Registrant's profits, treble damages, as well as costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**COUNT TWO:**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1125(a))**

44. Canada Goose repeats and realleges the allegations contained in the foregoing paragraphs 1 through 37, as if fully set forth herein.

45. Registrant's knowing use of the Canada Goose Trademarks will continue to cause confusion, deception, and mistake among the general purchasing public, by creating the false and misleading impression that Registrant and the products and retailers linked to/from the Infringing Domain Name are affiliated, connected, or associated with Canada Goose, or have the sponsorship, endorsement, or approval of Canada Goose.

46. By misappropriating and using the Canada Goose Trademarks and trade name, Registrant misrepresents and falsely describes to the general public the origin and source of the

products and retailers linked to from the Infringing Domain Name and creates a likelihood of confusion by consumers as to the source of such merchandise.

47. Registrant's acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Registrant's use of the Canada Goose Trademarks in interstate commerce constitutes a false designation of origin and unfair competition.

48. Canada Goose has no adequate remedy at law, and if the Registrant's activities are not enjoined, Canada Goose will continue to suffer irreparable harm and injury to its goodwill and reputation.

49. Registrant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Canada Goose Trademarks to Canada Goose's great and irreparable injury.

**COUNT THREE:**
**CYBERSQUATTING UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT**
**(15 U.S.C. § 1125(d)(1))**

50. Canada Goose repeats and realleges the allegations contained in the foregoing paragraphs 1 through 37, as if fully set forth herein.

51. The Infringing Domain Name is confusingly similar to the Canada Goose Trademarks, which were already distinctive and/or famous at the time that Registrant registered the Infringing Domain Name.

52. Registrant registered and used the Infringing Domain Name with a bad faith intent to profit from the Canada Goose Trademarks, by using the Infringing Domain Name to host the website on which Registrant used the Canada Goose Trademarks to mislead and confuse consumers searching for Canada Goose Products.

53. Registrant has no trademark or other intellectual property rights in the Infringing Domain Name or the Canada Goose Trademarks.

54. Registrant's activities, as alleged herein, violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

55. Canada Goose has no adequate remedy at law, and if Registrant's activities are not enjoined, Canada Goose will continue to suffer irreparable harm and injury to its goodwill and reputation.

56. Registrant is causing and will continue to cause substantial injury to the public and to Canada Goose, and Canada Goose is therefore entitled to injunctive relief, including an order requiring transfer of the Infringing Domain Name to Canada Goose, and to recover maximum statutory damages. In light of the egregious and exceptional nature of Registrant's conduct, Canada Goose is further entitled to reasonable attorneys' fees within the meaning of 15 U.S.C. § 1117.

**COUNT FOUR:**
**TRADEMARK INFRINGEMENT UNDER VIRGINIA COMMON LAW**

57. Canada Goose repeats and realleges the allegations contained in the foregoing paragraphs 1 through 37, as if fully set forth herein.

58. Registrant's conduct as alleged herein has violated and infringed Canada Goose's common law rights in the Canada Goose Trademarks.

59. The Canada Goose Trademarks are inherently distinctive or otherwise have acquired distinctiveness as a result of long-time use, advertising and promotion.

60. Registrant's use of the Canada Goose Trademarks creates the likelihood that the public, suppliers, customers, and potential customers will be confused into mistakenly believing

that Registrant or the products it provides links to through the Infringing Domain Name are in some manner associated with, or sponsored by, Canada Goose.

61. Registrant's trademark infringement is intentional and willful.

62. Registrant's trademark infringement has damaged Canada Goose, and unless enjoined, will continue to irreparably damage the reputation and goodwill associated with the Canada Goose Trademarks. Canada Goose has no adequate remedy at law.

## COUNT FIVE:
## VIRGINIA COMMON LAW UNFAIR COMPETITION

63. Canada Goose repeats and realleges the allegations contained in the foregoing paragraphs 1 through 37, as if fully set forth herein.

64. Registrant's conduct as alleged herein is unlawful, unfair and fraudulent and has caused actual injury to Canada Goose.

65. Canada Goose has built valuable goodwill in its Canada Goose Trademarks. Registrant's use of the Canada Goose Trademarks is likely to confuse and deceive the public regarding a connection or affiliation between Canada Goose and Registrant and/or the products and retailers linked to from the Infringing Domain Name. This conduct results in damage to Canada Goose's goodwill and reputation and unjust enrichment of Registrant.

66. Registrant's conduct has injured Canada Goose and, unless enjoined, will continue to cause great, immediate, and irreparable injury to Canada Goose.

67. Canada Goose is entitled to injunctive relief and an order for restitutionary disgorgement of all of Registrant's ill-gotten gains.

**PRAYER FOR RELIEF**

Canada Goose prays for judgment as follows:

    A.    Grant a preliminary and thereafter a permanent injunction restraining and enjoining Registrant and all those in privity, concert or participation with Registrant from:

    (i.)    making any use of the Canada Goose Trademarks or any mark confusingly similar to the Canada Goose Trademarks, including through the Infringing Domain Name or any other confusingly similar name domain name;

    (ii.)    using the Canada Goose Trademarks in such fashion as is likely to falsely relate or connect Registrant or Canada Goose's competitors with Canada Goose; using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that any service or product advertised, promoted, offered or sold by Registrant is sponsored, endorsed, connected with, approved, or authorized by Canada Goose;

    (iii.)    utilizing the Infringing Domain Name and registering, trafficking in, or using any additional domain names that use or incorporate any of the Canada Goose Trademarks, or any colorable imitation thereof;

    (iv.)    using the Canada Goose Trademarks, including any trademark, service mark, name, logo, design or source designation of any kind owned by Canada Goose, or any reproduction, counterfeit, copy or colorable imitation of the Canada Goose Trademarks, in connection with Registrant's domain names, websites, other online services or activities, or

any other goods or services, that is likely to cause confusion, mistake, deception, or public misunderstanding that such domain names, websites, other online services or activities, or other goods or services are produced or provided by Canada Goose, or are sponsored or authorized by or in any way connected or related to Canada Goose;

(v.)　operating the website located at the Infringing Domain Name;

(vi.)　engaging in any other activity constituting unfair competition or infringement of the Canada Goose Trademarks or Canada Goose's rights in, or to use, or to exploit the same; and

(vii.)　assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (i) through (vii) above.

B.　Find that Registrant has infringed the Canada Goose Trademarks in violation of federal law and has damaged Canada Goose's goodwill by the acts complained of herein.

C.　Find that Registrant has unfairly competed with Canada Goose, has made false representations in interstate commerce, and/or has engaged in false designation of origin in violation of federal law.

D.　Order that VeriSign and the individual registrar, Uniregistrar Corp., holding or listing the Infringing Domain Name and any other infringing domain name owned or controlled by Registrant, immediately disable these domain names, through a registry hold, lock, or otherwise, and make them inactive and non-transferable.

E.  Order that the individual registrar, Uniregistrar Corp., of the Infringing Domain Name, reveal the true identity of the Registrant, including name, address, phone number, and email address.

F.  Order that VeriSign and the individual registrar, Uniregistrar Corp., holding or listing the Infringing Domain Name and any other infringing domain name owned or controlled by Registrant, cooperate with a registrar to be appointed by Canada Goose to re-register the Infringing Domain Name in Canada Goose's name and under Canada Goose's ownership.

G.  Find that Registrant has infringed the Canada Goose Trademarks in violation of the common law of trademark infringement of the Commonwealth of Virginia.

H.  Find that Registrant has unfairly competed with Canada Goose by the acts complained of herein in violation of Virginia common law.

I.  Find Registrant liable and award to Canada Goose monetary damages in an amount to be to be determined at trial, including all of Registrant's profits or gains of any kind resulting from its willful infringement, said amount to be trebled in view of the intentional nature of the acts complained of herein, pursuant to 15 U.S.C. § 1117.

J.  Award Canada Goose pre-judgment and post-judgment interest on any monetary awards.

K.  Order Registrant to disgorge its profits.

L.  Award Canada Goose such other and further relief as the Court may deem just, proper and equitable under the circumstances.

**PLAINTIFF HEREBY DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

Dated:  August 9, 2017                    Respectfully submitted,

/s/ David G. Barger
David G. Barger (VSB No. 21652)
Theresa A. Queen (VSB No. 44462)
***Counsel for plaintiff Canada Goose Inc.***
GREENBERG TAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Telephone:  (703) 749-1300
Facsimile: (703) 749-1301
bargerd@gtlaw.com
queent@gtlw.com

Ian C. Ballon
(*Pro hac vice* admission pending)
Nina D. Boyajian
(*Pro hac vice* admission pending)
***Counsel for plaintiff Canada Goose Inc.***
GREENBERG TAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: 310-586-7700
Fax 310-586-7800
Ballon@gtlaw.com
BoyajianN@gtlaw.com